1

2

3

4

5

6

7                                    UNITED STATES DISTRICT COURT
                                  WESTERN DISTRICT OF WASHINGTON
8                                              AT TACOMA

9    CRAIG WEIGHALL,

10                       Plaintiff,                     Case No. C06-5663 RBL/KLS

11           v.                                         REPORT AND
                                                        RECOMMENDATION
12   LT. PEA, *et al*.,
                                                        **NOTED FOR:**
13                       Defendants.                    **November 16, 2007**

14

15          Before the Court are the motions for summary judgment of Defendants Lt. James Pea and

16   Savouth Uch (Dkt. # 18) and Mary Briggs[1] (Dkt. # 21).   Defendants seek summary dismissal of

17   Plaintiffs' claims, arguing that Plaintiff has failed to exhaust his administrative remedies, that they are

18   entitled to qualified immunity, and that Plaintiff has failed to establish a violation of the Eighth

19   Amendment.[2]  Plaintiff alleges that Defendants denied him due process by placing him in

20   administrative segregation without infraction or hearing, and that Defendants were deliberately

21   indifferent to his medical and handicap needs and violated his Eighth Amendment rights regarding

22   conditions of confinement.  (Dkt. # 5).

23

24          [1]Defendant Mary Briggs was improperly identified as Mary Riggs in Plaintiff's Complaint.
25   (*See* Answer and Declaration of Mary Briggs, Dkt. # 16, 22).  Therefore, all named Defendants are
     before the Court in these motions for summary judgment.
26
            [2]The Court granted extensions of Defendants' motions, by agreement of the parties (Dkt. #
27   26), upon motion of the Plaintiff (Dkt. # 29), and to allow sufficient time for replies (Dkt. # 34).

28   REPORT AND RECOMMENDATION - 1

1    In support of their motion, Defendants Pea and Uch submit the Declaration of Lt. James Pea.

2    (Dkt. # 19).  Defendant Mary Briggs submits her Declaration (Dkt. # 22) and Supplemental

3    Declaration with copies of Plaintiff's kites and medical records of June 12, 13 and 16, 2005 (Dkt. # 37,

4    Exhibits A and B).  Plaintiff has submitted his memorandum in opposition to Defendants' motions

5    (Dkt. # 30) , with Exhibits A through F, and his Declarations (Dkt. # 31 and 32).

6    After careful review of the motions, supporting declarations and documents, and balance of the

7    record, and viewing the facts in the light most favorable to the Plaintiff, the undersigned recommends

8    that Defendant Mary Briggs is entitled to summary dismissal of the claims against her.  The

9    undersigned also recommends summary dismissal of the claims against Defendants Pea and Uch

10   except as to Plaintiff's due process claim.

## I.  FACTS

12   Plaintiff was incarcerated in the Lewis County Jail from April 25, 2005 to October 28, 2005.

13   (Dkt. # 5 at 3; Dkt. # 19 at ¶ 3; Dkt. # 30, Exh. A; Dkt. # 31 at ¶ 1).   He was held in administrative

14   segregation from July 23, 2005 to October 11, 2005.  (Dkt. # 30, Exh. A).

15

16   Defendant James Pea is a Lieutenant with the Lewis County Jail.  (Dkt. # 19 at ¶ 2).  Defendant

17   Savouth Uch no longer works at the Lewis County Jail.  (*Id*. at ¶ 5).

18   Plaintiff is missing one leg and, upon request of medical personnel, was to be placed in a cell

19   with special accommodations.  (Dkt. # 19 at ¶ 4).  Defendant Pea declares that Plaintiff was placed in a

20   cell with special accommodations, such as a handicap shower stall.  (*Id*.).  Plaintiff declares that he

21   was not placed in a handicap cell, but in a normal lockdown cell.  (Dkt. # 31 at ¶ 8).  Plaintiff also

22   testified that his wheelchair and crutches were taken away from him, forcing him to hop or crawl to

23   and from the shower and telephone.  (Dkt. # 32 at p. 2). Plaintiff acknowledges in his complaint that

24   his cell was equipped with a handicap rail, but complains that it was in the wrong place.  (Dkt. # 3).

25   After Plaintiff was at the Lewis County Jail for a month and a half, he was placed on

26

27

28   REPORT AND RECOMMENDATION - 2

administrative segregation. (*Id.* at ¶ 3; *See also* Dkt. # 30, Exh. C[3]). He also alleges that this transfer occurred on orders of Lt. Pea. (Dkt. # 30). Plaintiff alleges that this was done without hearing or infraction. (Dkt. # 5 at 3; Dkt. # 30 at 1). During the time he was on administrative segregation, his ink pen and other writing utensils were taken from him on at least two occasions so that Plaintiff was unable to write grievances. (Dkt. # 31 at ¶7).

Plaintiff's cell flooded each time another inmate took a shower. (Dkt. # 31 at ¶ 4). Darryl Ball, a trustee in the pod where Plaintiff was housed would come to his cell and mop it dry after it flooded. (Dkt. # 32, p. 1). Tony Chasen, an inmate housed in Pod D6D1, also mopped out Plaintiff's cell when it flooded. (*Id*). Due to the flooding, Plaintiff slipped and he believed he broke his pelvic bone. (Dkt. # 31 at ¶ 5). Plaintiff declared that he waited for three days to see a nurse. (*Id*.). On June 12, 2005 or June 13, 2005, Plaintiff submitted an "Inmate Request" for medical services, stating that "As I move little I can tell that something is wrong with the bone. It dose feel chiped or brock intence pain. I don't understand why no one is helping. 12:00 AM lef side." (Dkt. # 37, Exh. A). In another "Inmate Request" for medical assistance dated June 13, 2005, Plaintiff states "slipped fell hit concrete bed, brock peice of bone on side. Thats what it feel like hurts. Bone moves back an forth not sposto. I was told to stay off button." (*Id*.) The Inmate Request forms indicate that Plaintiff is housed in the "Old Jail Lockdown." (*Id*.)

Defendant Briggs is a registered nurse employed by Steck Medical Group of Chehalis, Washington. (Dkt. # 22 at ¶ 3). Steck Medical Group contracted with the Lewis County Jail to provide medical care services to inmates at the Lewis County Jail. (*Id*. at ¶ 4). Physician care was not provided by Steck Medical Group. (Dkt. # 37 at ¶ 4).

---

[3]Exhibit C, attached by Plaintiff to his response is a memorandum from the Lewis County Jail Classification Hearing Committee dated October 11, 2005 indicating that as of that date, Plaintiff was off of administrative segregation.

REPORT AND RECOMMENDATION - 3

1
2
At certain times, Defendant Briggs provided medical care for Plaintiff while he was housed at

the Lewis County Jail between April 25, 2005 and October 28, 2005.  (Dkt. # 22 at ¶ 5).  Defendant

3
4
Briggs was not involved in choosing where Plaintiff was housed.  (*Id*. at ¶ 7).  Defendant Briggs was

not involved in any decision to place Plaintiff in an administrative segregation cell.  (Dkt. # 37 at ¶ 6).

5
6
Defendant Briggs was not on duty on either June 12, 2005 or June 13, 2005.  (*Id*. at ¶ 5).  Someone

7
other than Defendant Briggs saw the Plaintiff on April 13, 2005.  (*Id*.).

8
**II.  STANDARD OF REVIEW**

9
In examining Defendants' motions, the Court must draw all inferences from the admissible

10
evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d

11
12
1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving

13
14
party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex*

15
*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

16
Once the moving party has met its burden, the opposing party must show that there is a genuine

17
issue of fact for trial.  *Matsushita Elect. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87

18
19
(1986).  The opposing party must present significant and probative evidence to support its claim or

defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

20
21
**III.  DISCUSSION**

22
**A.      Exhaustion of Remedies**

23
The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative

24
remedies prior to filing a complaint in federal court.  The relevant portion of the PLRA states:

25
26
> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
27
> administrative remedies as are available are exhausted.

28
REPORT AND RECOMMENDATION - 4

1

2

42 U.S.C. § 1997e(a).

3

This requirement "applies to all prisoners seeking redress for prison circumstances or

4

occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002).  Further, "[a]ll 'available' remedies"

5

must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings."

6

*Id.* at 524.   Inmates must exhaust prison grievance remedies before filing suit if the grievance

7

8

system is capable of providing any relief or taking any action in response to the grievance, and

9

must do so in a timely manner.  *Booth v. Churner*, 531 U.S. 956, 121 S. Ct. 1819, 1825 (2001);

10

*Woodford v. Ngo.* 548 U.S. ___, 126 S.Ct. 2378, 2386 (2006).   The purpose of the exhaustion

11

requirement is to "reduce the quantity and improve the quality of prisoner suits; . . . [and] afford

12

corrections officials . . . opportunity to address complaints internally. . . . 42 U.S.C. § 1997e(a).

13

*McKart v. United States*, 395 U.S. 185, 195 (1969).

14

In deciding whether the PLRA exhaustion standard has been met, it must be remembered

15

16

that § 1997e(a) is an affirmative defense.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

17

Defendants have the burden of raising and proving the absence of exhaustion.  *Id*.  There can be

18

no "absence of exhaustion" unless some relief remains "available," and a defendant must

19

demonstrate that pertinent relief remained available, whether at unexhausted levels of the

20

grievance process or through awaiting the results of the relief already granted as a result of that

21

process.  *Brown v. Valoff*, 422 F.2d 926, 937 (9th Cir. 2005).

22

23

Defendants state in their motion that Plaintiff has not presented evidence that he exhausted

24

all available remedies for the allegations he asserts against them.  (*See* Dkt. # 18 at 3; Dkt. # 21 at

25

5).   They fail, however, to present any evidence to support their assertion and they, therefore,

26

have not met their burden under their affirmative defense.   There can be no "absence of

27

exhaustion" unless some relief remains "available," and defendants must demonstrate that

28

REPORT AND RECOMMENDATION - 5

1  pertinent relief remained available – for example, relevant evidence might include statutes,

2  regulations or other official directives explaining the scope of the administrative review process;

3  testimonial evidence from prison officials who administer the review process; and information

4
5  provided to the prisoner concerning the operation of the grievance procedure in this case.  *See,*

6  *e.g. Brown*, 442 F.3d at 936-37, citing *Wyatt*, 315 F.3d at 1119; *Brown v. Croak*, 312 F.3d 109,

7  113 (3rd Cir. 2002).

8      Plaintiff, on the other hand, claims that he was unable to exhaust his remedies because

9  after he filed his first grievance, his writing materials were taken away from him and exhaustion

10  was not fully possible "because of Defendant Lt. Pea's involvement in the removal of pen and

11  paper" from his possession.  (Dkt. # 30 at 2).  In his declaration, Plaintiff states that during the

12
13  time he was in administrative segregation, his ink pen and other writing utensils were taken away

14  from him so that he could not write grievances.  (Dkt. # 31 at 2).  Plaintiff states that this

15  "happened on at least two separate occasions."  (*Id.*)

16      Defendants Pea and Uch claim that this is insufficient to create a genuine issue of material

17  fact precluding a grant of summary judgment on this issue because there is no evidence that either

18  of them were involved in removing Plaintiff's pen and paper.  (Dkt. # 38 at 2).   Whether

19
20  Defendants were involved in removing Plaintiff's writing utensils is not material to the issue.  The

21  question is whether Plaintiff was able to properly exhaust his remedies when his ability to do so

22  within the time prescribed by the inmate grievance process would have been severely hampered

23  by the removal of his writing utensils.  The record reflects that Plaintiff was in administrative

24  segregation from July 23, 2005 until October 11, 2005.  (Dkt. # 30, Exh. A).  Defendants have

25  provided no summary judgment evidence of the grievance procedure available to a Lewis County

26  jail inmate.  However, based on a grievance filed by Plaintiff prior to the time he was housed in

27

28  REPORT AND RECOMMENDATION - 6

1 administrative segregation, the Court may conclude that an inmate must file a grievance within 24

2 hours of an alleged incident and appeal the grievance resolution within 72 hours.[4]

3 Viewing the evidence in the light most favorable to Plaintiff, the undersigned concludes

4 that, even though the Defendants have failed to meet their burden, the Plaintiff has shown that

5 there remains an issue of fact precluding the grant of summary judgment on the issue of

6 exhaustion for at least the time period when Plaintiff was in administrative segregation.  To

7 resolve the issue of exhaustion during this time period, the undersigned must conclude that

9 Plaintiff's failure to provide an exact time period of when he had access to writing materials while

10 in administrative segregation precludes him from proving that he was unable to participate in the

11 grievance process.  A trier of fact could just as reasonably conclude that during the "two

12 occasions" when Plaintiff claims his writing materials were taken from him, the 24 hour window

13 to grieve or 72 hour to appeal also occurred.  (*See* Dkt. # 30, Exh. B).

15 With regard to the period of Plaintiff's confinement at the Lewis County Jail when he was

16 not in administrative segregation, the Defendants have not provided any evidence to support their

17 affirmative defense.  Their motion should, therefore, be denied on the basis that Plaintiff failed to

18 exhaust his administrative remedies.

19 **B.      Plaintiff's Due Process Claim**

20

21 Plaintiff alleges that Defendants placed him in administrative segregation with no

22 disciplinary write-up or hearing.  (Dkt. # 5 at 3, 6; Dkt. # 30 at 1-2).  Plaintiff alleges that Defendant

23 Pea gave the transfer order to Defendant Uch, who was acting as a classification counselor, to

24

25        [4]Plaintiff attached to his response a Lewis County Jail Inmate Grievance dated May 12,
26 2005.  (Dkt. # 30, Exh. B).   The grievance form indicates that a "grievance must be filed within 24
hours" of an alleged incident and if the prisoner feels the grievance resolution is not acceptable, he
27 may appeal "within 72 hours".  (*Id.*).

28 REPORT AND RECOMMENDATION - 7

1    transfer Plaintiff into the segregation cell.  (Dkt. # 30 at 2).

2        The evidence reflects that Plaintiff was held in administrative segregation from July 23, 2005

3    until October 11, 2005.  (Dkt. # 30, Exh. A).   On October 11, 2005, his status was reviewed by the

4

5    Lewis County Jail Classification Committee and he was taken off administrative segregation and put

6    in "a medium housing override."  (*Id*., Exh. C).  Plaintiff was notified by the Classification

7    Committee that his status would "be reviewed weekly[,]" and that "the Classification Committee

8    makes decisions based on [his] behavior which is observed and logged by staff."  (*Id*.).

9        Prisoners may not be deprived of life, liberty or property without due process of law . . . [t]he

10   fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are

11
     not subject to restrictions imposed by the nature of the regime to which they have been lawfully
12
     committed . . .  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted); see also *Sandin v.*
13
14   *Conner*, 515 U.S. 472, 478 (1995).

15       When a prisoner is placed in administrative segregation, prison officials must, within a

16   reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the

17   evidence justifying the decision to segregate the prisoner.  *See Hewitt v. Helms*, 459 U.S. 460, 476

18   (1983); *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992); *Toussaint v. McCarthy*, 801

19   F.2d 1080, 1100 (9th Cir. 1986).  Before the review, the prisoner must receive some notice of the
20
     charges and be given an opportunity to respond to the charges.  *See id*. at 476; *Mendoza*, 960 at
21
22   1430-31; *Toussaint*, 801 F.2d at 1100.[5]

23   _____

24       [5]The prisoner is *not* entitled to "written notice of charges, representation of counsel or
     counsel-substitute, an opportunity to present witnesses . . . a written decision describing the reasons
25   for placing the prisoner in administrative segregation . . . disclosure of the identity of any person
26   providing information leading to the placement of a prisoner in administrative segregation."
     *Toussaint*, 801 F.2d at 1101. (Citations omitted) (emphasis added).
27

28   REPORT AND RECOMMENDATION - 8

1
2
After the prisoner has been placed in administrative segregation, prison officials must

periodically review the initial placement.  *See Hewitt*, 459 U.S. at 477 n. 9; *Toussaint*, 801 F.2d at

3
4
1101.

5
Defendants Pea and Uch do not address Plaintiff's constitutional due process claim related to

6
his placement in administrative segregation, except to the extent they claim that he has not exhausted

7
his administrative remedies.  Defendants Pea and Uch do not specifically deny that they were

8
involved in Plaintiff's placement in administrative segregation.

9
However, Defendant Briggs provides a declaration affirmatively stating that she had no

10
responsibility for any decision involving the placement of Plaintiff into administrative segregation at

11
12
any time.  (Dkt. # 37 at ¶ 6).   This testimony is uncontroverted.  Accordingly, to the extent that

13
Plaintiff seeks to hold Defendant Briggs liable relating to his claim for any due process violation, the

14
undersigned recommends summary dismissal as to the claim against Defendant Briggs only.

15
To the extent that Plaintiff's due process claim was not addressed by the remaining

16
Defendants and because there remain issues of fact as to whether Plaintiff properly exhausted his

17
administrative remedies (as discussed above), the undersigned recommends that summary judgment

18
on this claim be denied as to Defendants Pea and Uch.

19
**C.      Plaintiff's Eighth Amendment Claim**

20
21
**1.      42 U.S.C. § 1983**

22
To state a claim under 42 U.S.C. § 1983, the defendant must be a person acting under

23
color

24
of state law; and his conduct must have deprived the plaintiff of rights, privileges, or immunities

25
26
secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535

27
(1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)**.**  Implicit

28
REPORT AND RECOMMENDATION - 9

1   in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*,

2   429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert.*

3   *denied*, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements,

4
    his complaint must be dismissed.
5
6        The Court is satisfied that the Plaintiff has properly sued state actors for purposes of this

7   section 1983 claim.  Defendant Briggs admits that, as an employee of Steck Medical Group who

8   was contracted by the Lewis County jail to provide medical care services to inmates, she was a

9   state actor within the meaning of 42 U.S.C. § 1983.  (Dkt. # 21, p. 7; # 37 at ¶¶ 3-5).

10       In this case, Plaintiff claims that Defendants have violated his rights under the Eighth

11  Amendment of the Constitution.
12
13       **2.      Plaintiff's Claims Under the Eighth Amendment - Medical Treatment**

14       Deliberate indifference to an inmate's serious medical needs violates the Eighth

15  Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97,

16  104 (1976).  Deliberate indifference includes denial, delay or intentional interference with a

17  prisoner's medical treatment.  *Id*. at 104-5; *see also Broughton v. Cutter Labs*., 622 F.2d 458, 459-

18  60 (9th Cir. 1980).  To succeed on a deliberate indifference claim, an inmate must demonstrate that

19
    the prison official had a sufficiently culpable state of mind.  *Famer v. Brennan*, 511 U.S. 825, 836
20
21  (1994).  A determination of deliberate indifference involves an examination of two elements: the

22  seriousness of the prisoner's medical need and the nature of the defendant's response to that need.

23  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

24       First, the alleged deprivation must be, objectively, "sufficiently serious." *Farmer,* 511

25  U.S. at 834.  A "serious medical need" exists if the failure to treat a prisoner's condition would

26
    result in further significant injury or the unnecessary and wanton infliction of pain contrary to
27
28  REPORT AND RECOMMENDATION - 10

1  contemporary standards of decency.  *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993); *McGuckin*,

2  974 F.2d at 1059.  Second, the prison official must be deliberately indifferent to the risk of harm

3  to the inmate.  *Farmer*, 511 U.S. at 834.

4

5        An official is deliberately indifferent to a serious medical need if the official "knows of

6  and disregards an excessive risk to inmate health or safety."  *Id.* at 837.  Deliberate indifference

7  requires more culpability than ordinary lack of due care for a prisoner's health. *Id.* at 835.  In

8  assessing whether the official acted with deliberate indifference, a court's inquiry must focus on

9  what the prison official actually perceived, not what the official should have known.  *See Wallis v.*

10 *Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).   In other words an official must (1) be actually

11 aware of facts from which an inference could be drawn that a substantial risk of harm exists, (2)

12 actually draw the inference, but (3) nevertheless disregard the risk to the inmate's health.  *Farmer*,

13 511 U.S. at 837-8.

14

15       **3.      Claim Against Defendant Briggs**

16       The summary judgment evidence reflects that Plaintiff submitted two requests for medical

17 attention.  The first request is dated June 12, 2005 (or June 13, 2005 – the date appears to be

18 crossed out and written over).  (Dkt. # 37, Exh. A).  In it, Plaintiff complains that he is feeling

19 pain and that something feels chipped or broken.  (*Id.*)  In the second request, dated June 13,

20 2005, Plaintiff explains that he slipped and fell and hit the concrete bed and broke a piece of bone

21 on his side.  (*Id.*).  The medical records reflect that Plaintiff was examined by R. Anderson, R.N.

22 on June 13, 2005.  (Dkt. # 37, Exh. B).  The records reflect that Nurse Anderson did not find that

23 Plaintiff had suffered a broken or chipped bone.  (*Id.*)  Nurse Anderson's notes also reflect that

24 Plaintiff insisted on being seen by a doctor and a notation in the record reflects that Plaintiff was

25 "already on list to see Dr."  (*Id.*).

26

27

28 REPORT AND RECOMMENDATION - 11

1      Plaintiff was seen again on June 16, 2005 by R. Edison, a physician's assistant.  (*Id.*).

2      Defendant Briggs was not on duty on either June 12, 2005 or June 13, 2005.  (Dkt. # 37 at ¶

3  5), nor did she see the Plaintiff for the complaints related to his slip and fall.

4      Plaintiff's declarations provides the Court with further summary judgment evidence that

5  Plaintiff fell in his cell due to the flooding caused when other inmates took their showers.  (Dkt. #

6  31 at ¶ 4).   The fall caused Plaintiff to believe that he broke a piece of bone in his pelvic area.

7  (*Id.*).   Plaintiff declares that it was three days before he saw a nurse. (*Id.* at ¶ 5).   Plaintiff does not

8  remember the name of the nurse, but she told him that "there was nothing in which to compare

9  this break to and refused to take any action for it."  (*Id.* at ¶ 6).   Plaintiff further declares that he

10  was in excruciating pain after his fall.  (Dkt. # 32, p. 1).

11      For purposes of this summary judgment motion, the Court accepts these factual statements

12  as true.   Viewed in the light most favorable to Plaintiff, however, they fail to show how his

13  damage or pain was proximately caused by any deliberate medical indifference of Defendant

14  Briggs.  Plaintiff has presented no competent medical evidence reflecting that Defendant Briggs

15  failed to comply with the standard of care or even provided any care to Plaintiff during the time at

16  issue.  The undisputed evidence reflects that Defendant Briggs provided medical care for Plaintiff

17  while he was housed at the Lewis County Jail between April 25, 2005 and October 28, 2005.

18  (Dkt. # 37 at ¶ 5).  However, the evidence also reflects that Defendant Briggs was not on duty on

19  June 12 or June 13, 2005, and that she did not make the entries in the medical records on June 13,

20  2005.  (*Id.*).  The undisputed evidence also reflects that Defendant Briggs had no involvement in

21  Plaintiff's cell assignment.  (*Id.* at ¶ 6).

22      Thus, even accepting Plaintiff's allegations and averments as true, his action against

23  Defendant Briggs still fails.  There is no evidence that he suffered from any acute medical

28  REPORT AND RECOMMENDATION - 12

condition or that he was denied access to medical care or treatment.  To the contrary, the evidence

reflects that he requested medical attention and was provided medical attention.  And, the

evidence specifically reflects that Defendant Briggs was not the provider of the care on the

occasion of which he complains or that she was in any way involved in his placement in a non-

handicapped cell.

As Plaintiff has not raised a factual dispute as to any medical indifference of Defendant

Briggs, the undersigned recommends that Defendant Briggs' motion for summary judgment on

Plaintiff's constitutional claims be granted.

**4.      Claims Against Defendants Pea and Uch - Conditions of Confinement**

In support of this claim, Plaintiff provides his declaration stating he was in a normal

lockdown cell.  (Dkt. # 31 at ¶ 8).  The fact that Plaintiff was in a "lockdown" cell, for at least

some of his incarceration at the Lewis County jail, is corroborated by the Grievance Resolution

found at Dkt. # 30, Exh. D.  In that grievance, Plaintiff requests that he be allowed to bring a

wheelchair in for his use.  (*Id*.).  A member of the jail staff responded to the grievance, stating:

> We will provide a wheelchair anytime you need to go long distance.  No wheelchair
> can be brought in.  You have crutches and your [sic] in a lockdown cell.

(*Id*.).

Plaintiff also testifies that his crutches were taken away from him.  (Dkt. # 32 at 2).

Plaintiff has also testified that his cell flooded each time another inmate took a shower (Dkt.

# 31 at ¶ 4), that other inmates helped mop out his cell after such floodings (Dkt. # 32, p. 1); and, that

due to the flooding, Plaintiff slipped and fell and hurt his pelvic bone.  (Dkt. # 31 at ¶ 5).

Defendant Pea testified that, at the request of medical personnel, Plaintiff was placed in a

cell with special accommodations, such as a handicapped shower stall.  (Dkt. # 19).

Plaintiff does not dispute that he was in a cell with special accommodations, but in his

REPORT AND RECOMMENDATION - 13

1   Complaint, alleges that the rail in his cell was in the wrong place. (Dkt. # 3).

2       Where the conditions of confinement are challenged, as they are here, a plaintiff must

3   show two things: (1) that the deprivation was "sufficiently serious" to form the basis for an Eighth

4

5   Amendment violation, and (2) that the prison official(s) acted "with a sufficiently culpable state of

6   mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).   As to the first prong, it is well settled that

7   prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing,

8   sanitation, medical care, and personal safety. *See Farmer*, 511 U.S. 825.   In addition, denial of

9   adequate, handicapped accessible toilet, showering facilities, or housing accommodations to

10  mobility-impaired inmates may violate constitutional rights. *See, e.g.*, *LaFaut v. Smith*, 834 F.2d

11
    389, 392-94 (4th Cir. 1987) (failure to provide accessible toilet facilities); *Casey v. Lewis*, 834
12
    F.Supp. 1569, 1582 (D. Ariz. 1993) (failure to provide adequate shower facilities); *Frost v. Agnos*,
13
14  152 F.3d 1124 (9th Cir. 1998) (failure to provide handicapped accessible shower facilities to

15  pretrial detainee).

16      Even assuming Plaintiff has satisfied the first prong, the Court finds that Plaintiff's Eighth

17  Amendment claim against Pea and Uch is subject to summary dismissal because Plaintiff's proof

18  fails as to the second prong.  In addition to a sufficiently serious objective harm, an Eighth

19
    Amendment violation requires a showing that the subjective state of mind of the prison officials
20
21  was culpable. *Wilson*, 501 U.S. at 298-99.  To act with deliberate indifference, an official must

22  have knowledge of an excessive risk to inmate health or safety and must deliberately disregard

23  that risk. *Farmer*, 511 U.S. at 837.  Plaintiff must show that the defendant officials had actual

24  knowledge of the plaintiff's basic human needs and deliberately refused to meet those needs. *Id*.

25  at 842.

26      Here, viewing the evidence in the light most favorable to the Plaintiff, the undisputed

27

28  REPORT AND RECOMMENDATION - 14

evidence establishes that Defendants placed Plaintiff in a handicapped cell at the direction of medical personnel. As to Plaintiff's remaining allegations, none can be fairly attributed to the knowledge of Defendants Pea and/or Uch. Plaintiff has not alleged or provided any evidence that either Defendant Pea or Uch knew of or should have known of any flooding or any other conditions occurring in his cell.

Accordingly, as Plaintiff has not raised a factual dispute as to whether Defendants Pea and/or Uch knew of a substantial risk of serious harm to Plaintiff and disregarded it, the undersigned recommends that the motion for summary judgment of Defendants Pea and Uch as to Plaintiff's Eighth Amendment claim related to his conditions of confinement be granted.

**D.      Qualified Immunity of Federal Officials**

Defendants urge that they are, in any event, entitled to qualified immunity from Plaintiffs' claims. As the Court has determined that Plaintiff has failed to allege deprivation of an actual constitutional right as to his Eighth Amendment claims of deliberate medical indifference and conditions of confinement as to Defendants Briggs, Pea and Uch, the issue of qualified immunity need not be reached as to those claims. With regard to Plaintiff's due process claim, as Defendants Pea and Uch did not address that claim in this motion, the issue of whether they are entitled to qualified immunity on that claim need not be reached at this time. *See e.q., Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

## IV.  CONCLUSION

For the reasons stated above the Court should **GRANT** the motion for summary judgment of Defendants Pea and Uch, **except** as to Plaintiff's due process claim (Dkt. # 18), and **GRANT** the motion for summary judgment of Defendant Briggs (Dkt. # 21). A proposed order accompanies this Report and Recommendation.

REPORT AND RECOMMENDATION - 15

1

   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

2

the parties shall have ten (10) days from service of this Report and Recommendation to file

3

written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of

4

those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating

5

the time limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for

6

consideration on **November 16, 2007**, as noted in the caption.

7

8

9

   DATED this 26th day of October, 2007.

10

11

12

Karen L. Strombom
United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION - 16